IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| KAYLEE R. BURNS, f/k/a DAWN R. BURNS, | **Cause No. CV-22-39-GF-BMM-JTJ** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| KILOLO KIJAKAZI, Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Kaylee R. Burns ("Burns" or "Plaintiff") brings this action under 42 U.S.C. § 405(g) seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner" or "Defendant"). (Doc. 2.) The Commissioner terminated Burns's social security disability benefits. (Doc. 15 at 2.) Defendant filed the Administrative Record on June 28, 2022. (Doc. 7.) Plaintiff filed an opening brief in which she moves for summary judgment. (Doc. 15.) She asks the Court to reverse and remand the decision of the Administrative Law Judge ("ALJ") with restoration of retroactive benefits, and payment of ongoing benefits. (Doc. 15

1

at 25.) Plaintiff's motion is fully briefed and ripe for the Court's review. (Docs. 15, 17 & 20.) For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds that the ALJ's decision should be affirmed.

## JURISDICTION

The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Plaintiff Burns resides in Valley County, Montana. 29 U.S.C. § 1391(e)(1). (Doc. 1 at 1-2.)

## PROCEDURAL BACKGROUND

Donald D. Burns, Plaintiff's father, filed his application for Title II and part B Medicare benefits under Title XVIII on September 7, 2006. (Doc. 15 at 2.) He identified Plaintiff as his daughter, stated she was disabled before age 22, and that she was entitled to receive Social Security benefits on his earnings record. (*Id.*) Donald D. Burns filed another application for Plaintiff entitled Child's Insurance Benefits–Life Claim on October 3, 2006. (*Id.*) In this application he specifically stated that Plaintiff had been disabled since birth. (*Id.*)

The May 18, 2019 Appeals Council Order provides that Plaintiff filed her own Title XVI application for benefits on December 7, 2000, and Title II application on

November 15, 2003. (*Id.*) The Order also provides that Donald D. Burns filed a Title II claim for childhood disability benefits on November 2, 2016. (*Id.*)

Plaintiff received Title II and Title XVI benefits when she turned eighteen-years-old for her attention deficit hyperactivity & dysthymic disorders. (Doc. 15 at 3.) The Commissioner continued Plaintiff's benefits following a review demonstrating that there was no "medical improvement" on May 19, 2010. (*Id.*)

The Commissioner again reviewed Plaintiff's entitlement to benefits in 2015, found medical improvement, and determined that benefits should be terminated as of March 10, 2015. (*Id.*) The March 10, 2015 Explanation of Determination provided that the Comparison Point Decision ("CPD") is May 19, 2010. (*Id.*)

Plaintiff filed a timely appeal, which culminated in the October 4, 2016 Disability Hearing Officers Decision. (*Id.*) Plaintiff appealed again, and an Administrative Law Judge ("ALJ") hearing was set for May 23, 2017. (*Id.*) Plaintiff did not attend. (*Id.*) Plaintiff later appeared *pro se* at a January 10, 2018 video hearing before ALJ Michael A. Kilroy. (*Id.*) ALJ Kilroy issued an Unfavorable Decision upholding the October 4, 2016 Hearing Officer's Decision on June 15, 2018. (*Id.* at 3-4.) Plaintiff retained counsel and timely appealed to the Appeals Council on June 22, 2018. (*Id.* at 4.)

The Appeals Council remanded the case to the ALJ on May 18, 2019. (*Id.* at 4.) Plaintiff attended two hearings with respect to whether her disability insurance benefits should be continued. ALJ Kilroy presided over the first hearing regarding Plaintiff's benefits on October 22, 2019. (Doc. 17 at 2; Doc. 15 at 3.) Medical expert, Michael F. Enright Ph.D., testified before the Plaintiff at this October 2019 hearing. (Doc. 17 at 2.) ALJ Kilroy suspended the hearing before it could be completed to maintain the ALJ's schedule for the next hearing. (Doc. 7-2 at 153.) ALJ Kilroy communicated that the hearing would be rescheduled on a future date. (*Id.* at 154.)

Burns's next hearing was held on February 24, 2021. (*Id.* at 67.) Although the matter was initially set for a hearing before ALJ Kilroy, a different ALJ—ALJ Raymond Rogers—ultimately presided over a *de novo* hearing. (Doc. 17 at 2.) The hearing over which ALJ Rogers presided was held telephonically due to the extraordinary circumstances presented by the COVID-19 pandemic. (Doc. 7-2 at 68; 25.) ALJ Rogers examined Vocation Expert Mr. Best. (*Id.* at 101.) ALJ Rogers did not call a medical expert to testify, which is within the ALJ's discretion. ALJ Rogers gave Plaintiff the opportunity to request supplemental testimony from a medical expert, but Plaintiff, through her attorney, declined. (*Id.* at 113.)

ALJ Rogers issued an Unfavorable Decision on April 7, 2021. (*Id.* at 22.) Plaintiff filed another appeal on June 2, 2021. The Appeals Council denied her

appeal on March 14, 2022. (*Id.* at 2.) Plaintiff appealed the Appeals Council denial to this Court.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Id.* (internal quotation marks omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted).

The District Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). "If evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the ALJ. *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1998).

## BURDEN OF PROOF

Plaintiff's appeal challenges the Agency's findings on a continuing disability

review that Plaintiff's condition improved after she was originally found disabled. Following a determination that a person is disabled, the Commissioner must evaluate the claimant's impairments "from time to time to determine if [the claimant is] still eligible for disability cash benefits." 20 C.F.R. §§ 404.1589, 416.989. This evaluation is a "continuing disability review" and claimants are notified that the review could result in the termination of benefits. *Id.*

The Agency has established an eight-step process for determining whether a person's entitlement to Title II disability insurance benefits has ended and a seven-step process for Title XVI supplemental security income benefits. *See* 20 C.F.R. §§ 404.1594(f)(1)-(8), 416.994. The Title XVI process is identical to the Title II process, except for the consideration of substantial gainful activity at the beginning of the disability insurance process and not during the Title XVI process. This multi-step continuing disability review process is similar to the five-step sequential evaluation process used to evaluate initial claims, with additional attention as to whether there has been medical improvement. *C.f.* 20 C.F.R. § 404.1520 and 416.920 with § 404.1594(f) and 416.994(b)(5), respectively.

In evaluating a disabled claimant's eligibility for benefits under this process, the Commissioner must consider whether "there has been any medical improvement in [claimant's] impairment(s) and, if so, whether this medical improvement is related

6

to [claimant's] ability to work." 20 C.F.R. § 404.1594. In addition, it must be established "that [the claimant is] currently able to engage in substantial gainful activity before [the agency] can find that [claimant is] no longer disabled." *Id*. The Commissioner's eight-step medical improvement standard for Title II cessation cases pursuant to 20 C.F.R. § 404.1594(f) is as follows:

> Step 1. Is the claimant engaging in substantial gainful activity?
>
> Step 2. If not, does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1? If so, the claimant's disability will be found to continue.
>
> Step 3. If a listing(s) is not met, has there been medical improvement as defined in 20 CFR §§404.1594(b)(1), 416.994(b)(1)(i)? If there is no decrease in the medical severity, there is no medical improvement.
>
> Step 4. If there has been medical improvement, the Commissioner must determine whether said improvement is related to the ability to work, or whether there has been an increase in the claimant's Residual Functional Capacity ("RFC") based on the impairment that was present at the time of the most recent favorable medical determination.
>
> Step 5. If there has been no medical improvement found at step 3, or if at step 4, the medical improvement was not related to the ability to work, the ALJ must determine whether any exceptions to the medical improvement standard exist. If no exceptions apply, the ALJ will find that the disability continues. If the first group of exceptions applies, continue to step 6. If an exception from

the second group of exceptions applies, the ALJ will find that the disability ended.

Step 6. If there has been medical improvement related to the claimant's ability to work or if one of the first group of exceptions to medical improvement applies, the ALJ must determine whether the claimant currently has a severe impairment or combination of impairments. If not, the claimant is no longer disabled.

Step 7. If the impairment is severe, the ALJ assesses the claimant's RFC based on the claimant's current impairments, and whether the claimant can still do the work he/she performed in the past. If the claimant is still capable of doing such work, the ALJ will find that the claimant is no longer disabled.

Step 8. If the claimant cannot do the kind of work that he/she performed in the past, the ALJ must review the claimant's RFC and age, education, and work experience to determine whether the claimant is capable of performing any other work which exists in the national economy. If the claimant can, the ALJ will find that the disability ended. If not, the disability continues.

For Title XVI cessation cases pursuant to 20 C.F.R. § 416.994(b)(5), the Commissioner's seven-step medical improvement standard is outlined here:

Step 1. Does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1? If so, the claimant's disability will be found to continue.

Step 2. If a listing(s) is not met, has there been medical improvement as defined in 20 C.F.R. § 416.994(b)(5)(ii)?

If there is no decrease in the medical severity, there is no medical improvement.

Step 3. If there has been medical improvement, the Commissioner must determine whether said improvement is related to the ability to work, or whether there has been an increase in the claimant's RFC based on the impairment that was present at the time of the most recent favorable medical determination. 20 C.F.R. § 416.994(b)(5)(iii).

Step 4. If there has been no medical improvement found at step 2, or if at step 3, the medical improvement was not related to the ability to work, the ALJ must determine whether any exceptions to the medical improvement standard exist. If no exceptions apply, the ALJ will find that the disability continues. If the first group of exceptions applies, continue to step 5. If an exception from the second group of exceptions applies, the ALJ will find that the disability ended. 20 C.F.R. § 416.994(b)(5)(iv).

Step 5. If there has been medical improvement related to the claimant's ability to work or if one of the first group of exceptions to medical improvement applies, the ALJ must determine whether the claimant currently has a severe impairment or combination of impairments. If not, the claimant is no longer disabled. 20 C.F.R. § 416.994(b)(5)(v).

Step 6. If the impairment is severe, the ALJ assesses the claimant's RFC based on the claimant's current impairments, and whether the claimant can still do the work he/she performed in the past. If the claimant is still capable of doing such work, the ALJ will find that the claimant is no longer disabled. 20 C.F.R. § 416.994(b)(5)(vi).

Step 7. If the claimant cannot do the kind of work previously performed, the ALJ must review the claimant's RFC and age, education, and work experience to determine whether the claimant is capable of performing any other work which exists in the national economy. If the claimant can, the ALJ will find that the disability ended. If not, the disability continues. 20 C.F.R. § 416.994(b)(5)(vii).

The Ninth Circuit has long held that the claimant's burden to establish disability "is a continuing one" that "neither shifts nor ends after an initial determination of disability has been made." *Ward v. Schweiker*, 686 F.2d 762, 765 (9th Cir. 1982) (citing *Mathews v. Eldridge*, 424 U.S. 319, 336 (1976) and *Patti v. Schweiker*, 669 F.2d 582, 586 (9th Cir. 1982)).

The Commissioner is not required to rebut a presumption of continuing disability in cessation of benefits cases. The Ninth Circuit has clarified that "there is no presumption of continuing disability under the Social Security Act." *Lambert v. Saul*, 980 F.3d 1266, 1276 (9th Cir. 2020) (clarifying confusion created under *Patti* as to "whether a claimant's prior disability determination entitles her to a presumption of continuing disability."). Accordingly, the ALJ is to view the evidence in a continuing disability review from a neutral perspective, without any initial inference as to the existence of disability being drawn from a prior finding of disability.

10

## BACKGROUND

### A. ALJ's Title II & Title XVI Determinations

The ALJ followed the eight-step and seven-step medical improvement standards for respective Title II and Title XVI cessation cases pursuant to 20 C.F.R. §§ 404.1594(f) and 416.994(b)(5). At step one for the Title II claims, the ALJ found that Burns has not engaged in substantial gainful activity between May 19, 2010, and the date of the Unfavorable Decision. (Doc. 7-2 at 28.) For the Title XVI claim, the performance of a substantial gainful activity is not a factor used to determine the claimant's disability continues. *See* 20 C.F.R. § 416.994(b)(5).

At step two of the Title II determination and step one of the Title XVI determination, the ALJ found that Burns has the following medically determinable impairments: degenerative disc disease of the lumbar spine, headaches, bipolar disorder, cognitive disorder, anxiety, and personality disorder. (Doc. 7-2 at 28.) The ALJ determined that Burns has not had an impairment or combination of impairments that meets or medically equals the severity of an impairment listed Appendix 1. (*Id.* at 29.)

At step three of the Title II determination and step two of the Title XVI determination, the ALJ found that medical improvement occurred on March 10, 2015. (*Id.* at 33.)

11

At step four of the Title II determination and step three of the Title XVI determination, the ALJ found that Burns's medical improvement is related to her ability to work, because by March 10, 2015, the claimant's impairments as of May 19, 2010 did not meet or medically equal any listing(s), or result in a disabling RFC. (*Id.* at 34.) The ALJ then properly moved to step six of the Title II determination and step five for the Title XVI determination following his determination that there has been a medical improvement related to Burns's ability to work.

At step six of the Title II determination and step five of the Title XVI determination, the ALJ found that Burns has continued to have a severe impairment or combination of impairments. (Id. at 34.)

At step seven of the Title II determination and step six of the Title XVI determination, the ALJ assessed Burns's RFC based on her current impairments. The ALJ determined that since March 10, 2015, the claimant has possessed the RFC to "lift and carry 20 pounds occasionally; 10 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for six hours in an eight-hour workday." (*Id.* at 35.) The ALJ's RFC determination noted that Burns is "able to understand, remember, and carry out simple tasks while maintaining attention and concentration for two hours at a time before requiring a regular scheduled break." (*Id.*) Burns is limited to "low stress work, defined as only occasional decision-making and only

12

occasional changes in the work setting; occasional interaction with coworkers and supervisor; and no interaction except incidental with the public." (*Id*.) The ALJ's RFC determination included that Burns is permitted to "stand and stretch after 30 minutes of work while being off task for up to one minute; occasional climbing of ramps or stairs" but is not permitted to do work that requires "climbing ladders ropes or scaffolds; frequent balancing, kneeling, and crouching; no crawling; occasional stooping; occasional overhead reaching." (*Id*.)

The ALJ further determined that Burns has been capable of performing past relevant work as a "cleaner, housekeeping." (*Id*. at 46.) The ALJ concluded that housekeeping-type work does not require Burns to perform work related activities precluded by Burns's RFC. (*Id*.) Having determined that Burns has been able to perform past relevant work cleaning and housekeeping at step seven of the Title II determination and at step six of the Title XVI determination, the ALJ concluded that Burns is no longer disabled. According to the ALJ, Burns's disability ended on March 10, 2015. (*Id*. at 48.)

### B. Burns's Position

Burns asserts that the Commissioner failed to carry the Agency's burden and rebut a presumption of continuing disability, which would favor Burns. (Doc. 15 at 1.) Burns further contends that the Commissioner breached the special duty owed to

a claimant, is biased toward Burns, and is unable to render fair judgment, depriving Burns of her due process rights. (*Id*. at 2.)

### C. Commissioner's Position

The Commissioner argues that the Court should affirm the ALJ's decision because the ALJ properly concluded that Burns's disability ended on March 10, 2015. (Doc. 17 at 5.) The Commissioner asserts that substantial evidence supports the Agency's final decision that Plaintiff's impairments improved, and that her improvement allowed her to perform work existing in significant numbers in the national economy. (*Id*.) The Commissioner additionally argues that Plaintiff failed to plead a due process claim, which forecloses her argument that during the course of receiving a full hearing, she was denied due process and subjected to the ALJ's bias. (*Id*.)

## DISCUSSION

### A. Due Process Claim

This Court rejects Plaintiff's attempt to raise a due process claim. Burns waived this claim by not raising it in the Complaint. (Doc. 15 at 22-24.) A claimant can establish federal court jurisdiction apart from 42 U.S.C. § 405(g) by raising a colorable constitutional claim. *See Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008). According to Plaintiff, she "does not concede" that the full hearing she

received following procedures she perceives as an "infringement upon her Due Process rights . . . are acceptable," (Doc. 15 at 14), but Plaintiff's Complaint does not provide a basis for raising a constitutional claim in this case. Plaintiff's Complaint did not raise a due process violation in order to invoke this Court's jurisdiction under 42 U.S.C. 405(g). (Doc. 2.) That law provides only for limited Court review to determine whether the Agency's final decision is free of legal errors and is supported by substantial evidence.

Moreover, Plaintiff's claim that the Commissioner "exhibited outright bias against Burns" is unsupported by the record. (Doc. 15 at 22.) To show bias, a claimant must demonstrate that the ALJ's behavior, in the context of the whole case, was "so extreme as to display clear inability to render fair judgment." *Rollins v. Massanari*, 261 F.3d 853, 857-58 (9th Cir. 2001). The record does not establish the that the ALJ conducted the hearings with bias. The record demonstrates that ALJ Rogers, who issued the relevant final Unfavorable Decision, (1) offered claimant a *de novo* hearing and allowed her to present her case, (2) gave Plaintiff an opportunity to request a subsequent hearing at which Dr. Enright or another medical expert could testify, if Plaintiff believed that was necessary, (Doc. 7-2 at 113-14), and (3) gave Plaintiff the opportunity to present additional records and argument after the hearing concluded. (Doc. 7-2 at 114.) The hearings testimony in the record shows that the

15

ALJ treated Plaintiff and counsel with respect (Doc. 7-2 at 65-114), and issued a decision that set forth his findings and the evidence supporting them. (Doc. 7-2 at 25-46.) Plaintiff points to no compelling evidence that the proceedings or ALJ were biased against her.

Plaintiff claims that at her second hearing, ALJ Kilroy suspended a hearing "after things started going Burns' way" based on testimony from Dr. Enright suggesting Plaintiff might meet the listing criteria. (Doc. 15 at 23). However, as discussed above, Dr. Enright did not testify that Plaintiff satisfied the listing criteria; Dr. Enright partially backtracked on his testimony and acknowledged that evidence might in fact show otherwise (Doc. 7-2 at 149-151.) ALJ Kilroy suspended the October 2019 hearing in order to maintain the ALJ's hearing schedule. (*Id.* at 153.) Plaintiff subsequently received a full hearing before ALJ Rogers, conducted telephonically due to the COVID-19 pandemic, with the opportunity to present additional evidence. There is no indication of bias or due process violation. This Court rejects Plaintiff's attempt to argue otherwise.

## B. Medical Improvement Determination

The ALJ found that Burns's disability ceased on March 10, 2015 because medical improvement occurred related to Burns's ability to work. (*Id.* at 33.) The ALJ reasonably determined that Plaintiff experienced medical improvement related

to her ability to work and that, as of March 2015, she could perform her past work as a housekeeper. (*Id.* at 46.) Plaintiff fails to acknowledge the substantial evidence supporting the ALJ's determination. Plaintiff has not established error.

The ALJ highlighted Plaintiff's activities that showed improvement since the 2010 CPD (*Id.* at 33-34) and supported the conclusion that despite Plaintiff's impairments "she has engaged in a somewhat normal level of daily activity and interaction" that were at odds with disabling limitations. (*Id.* at 34.) An ALJ may reasonably compare allegations of disability against activities that suggest greater functioning. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). For instance, in contrast to the 2010 CPD, which showed that Plaintiff was irritable and had difficulty controlling her anger, by 2015, Plaintiff was caring for her newborn son. The ALJ reasoned that Plaintiff's ability to care for a child in 2015 and the years thereafter supported a finding that Plaintiff had no more moderate mental limitations in areas such as interacting with others, concentrating and persisting, and adapting and managing herself. (*Id.* at 30.)

The ALJ also highlighted benign mental status examination findings during the relevant period and evidence showing Plaintiff's functioning improved with medication. (*Id.* 33-34, 40-43.) Impairments that can be controlled effectively with treatment are not disabling. *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.,*

439 F.3d 1001, 1006 (9th Cir. 2006). Objective medical records that contradict statements of debilitating impairments can support an ALJ's decision that the claimant functioned at greater levels. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). The medical records to which the ALJ cited support that, at least as early as March 2015, Plaintiff's condition improved with treatment from the 2010 CPD, when she was found to be irritable, somewhat manic, and likely to decompress. (*Id.* at 33-34.) The ALJ noted that in January 2015, Plaintiff reported she was feeling "100%." (*Id.* at 33.) The following month, Plaintiff said her "symptoms were well controlled" and "functioning was not difficult at all." (*Id.* at 42.) In January 2015, she reported she was "feeling 100%." (*Id.* at 40.)

At her follow-up appointment in April 2015, it was noted that Plaintiff was caring for two children and she was doing very well on her current medications of Lithium and Latuda. (*Id.*) Her provider noted she was working at a grocery store and had become "quite stable." (*Id.*) She presented as oriented, with a euthymic mood, good insight, and preserved judgment, and her bipolar was noted to be in partial remission. (*Id.*) Her provider continued her on her medications and she continued to participate in psychotherapy. (*Id.*)  In June 2015, she reported she was complying with her medical regiment and doing well. Plaintiff reported that she loved her job, and her provider noted she was continuing to respond well to Lithium and Latuda.

At her follow-up appointment in October 2015, she was again noted to be stable and continued on her medications. (*Id.*)

Plaintiff stopped taking her Latuda and lithium medication on her own around May 2016 (*Id.* at 41), but then later began taking different medications that improved her functioning. (*Id.*) Plaintiff offers no argument that the ALJ erred when considering the substantial medical record showing benign findings, and she fails to even acknowledge the records from 2015 and later showing that Plaintiff's condition improved markedly when she complied with treatment recommendations. (*Id.*) The ALJ's decision is supported by more than a mere scintilla of evidence that the record reflected medical improvement.

The ALJ also considered Plaintiff's ability to work during the relevant period. (*Id.* at 46-47.) The Ninth Circuit has plainly held "[a]n ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled . . ." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (when assessing the extent of plaintiff's limitations, the ALJ was entitled to consider that "Ford's own testimony established that she was able to work occasional eight-hour shifts.") (citation omitted). Trial or unsuccessful work attempts do not constitute dispositive evidence that a claimant is not disabled. However, even unsuccessful work attempts will not preclude "a finding of disability during the time that such work was performed . . ."

19

Social Security Ruling (SSR) 84-25, 1984 WL 49799 at *2.

The ALJ did not find Plaintiff's work attempts dispositive and did not terminate her benefits simply because she performed numerous jobs most at levels under substantial gainful activity. (Doc. 7-2 at 46-47.) However, the ALJ appropriately considered the record as a whole, including evidence that Plaintiff was able to work in 2015 and beyond. (*Id.*) This evidence was probative and suggested Plaintiff's mental function and physical impairments had improved and did not preclude her from working. (*Id.*) The ALJ did not err in considering Plaintiff's work history, alongside other evidence, and finding that Plaintiff's impairments had medically improved since the prior comparison point decision. Plaintiff fails to show error.

## CONCLUSION

Upon review pursuant to 42 U.S.C. § 405(g), the Court determines that the ALJ's findings and Commissioner's termination of Burns's Social Security benefits are supported by substantial evidence. *See Revels*, 874 F.3d at 654. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[e]ven when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Ludwig v. Astrue*, 681

F.3d 1047, 1051 (9th Cir. 2012). Substantial evidence found in Burns's record reasonably supports affirming the Commissioner's decision.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that:

1.   The ALJ's decision is **AFFIRMED**.

2.   Plaintiff's Motion (Doc. 14) is **DENIED**.

3.   The Clerk of Court is directed to enter judgment accordingly.

DATED this 22nd day of March, 2023.

John Johnston
United States Magistrate Judge